IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PATRICK HATELY | |
| v. | Case No. 16-cv-01143-GBL-MSN |
| NICOLE TORRENZANO | |

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

Plaintiff Patrick Hately ("Plaintiff") sues Defendant Nicole Torrenzano ("Defendant") and states as follows:

## INTRODUCTION

This is an action pursuant to the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.) the Stored Communications Protection Act (18 U.S.C. § 2701 et seq.), and several applicable Virginia statutes related to computer fraud, trespass and privacy. Upon information and belief, Defendant accessed Plaintiff's personal email accounts for purposes of acquiring information about Plaintiff. Also upon information and belief, Defendant unlawfully acquired information about Plaintiff for purposes of assisting Defendant in her custody action against Plaintiff. Upon information and belief, non-party David Watts, in a relationship with Torrenzano, assisted in the unlawful access, and provided technological resources to assist in the unlawful conduct.

## PARTIES

1. Patrick Hately is an adult citizen residing at 128 Pittman Court, Stephens City, VA 22655.

2. Upon information and belief, Defendant Nicole Torrenzano is an adult citizen residing at 1963 Cidermill Lane, Winchester, VA 22601.

3. Upon information and belief, non-party Dr. David Watts is an adult citizen residing at 281 Saint Andrews Ct, Winchester, VA 22602.

## JURISDICTION AND VENUE

4. The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. The Court has personal jurisdiction in this matter because both Defendant reside in Virginia, within this judicial district.

6. Venue is proper in this Court because all Defendant are residents of Virginia. This is also the district in which a substantial part of the events or omissions giving rise to this claim occurred and a substantial part of property that is the subject of this action is situated. 28 U.S.C. § 1391.

## BACKGROUND

7. Plaintiff and Defendant Nicole Torrenzano were involved in a relationship for approximately five years and have two children together.

8. Plaintiff and Ms. Torrenzano separated in approximately March or April 2015.

9. Upon information and belief, Ms. Torrenzano was also in a relationship with non-party David Watts during all relevant time periods.

10. Mr. Watts is married to Mrs. Audrey Watts, though divorce proceedings are pending.

11. On March 22, 2016, Ms. Torrenzano was deposed as part of the divorce proceedings of Mr. and Mrs. Watts, Case No. CL15-255 in the Frederick County Circuit Court of Virginia. *See* Docket #1-1.

12. After Plaintiff and Ms. Torrenzano separated, Mrs. Watts contacted Plaintiff and asked if he knew about the relationship between Mr. Watts and Ms. Torrenzano.

13. Upon information and belief, on or around June 2015, Ms. Torrenzano discovered that Mrs. Watts had contacted Plaintiff.

14. Upon information and belief, on or around July 2015, Ms. Torrenzano hacked into Plaintiff's personal cell phone account to prove that the communications had occurred.

15. Upon information and belief, after hacking into Plaintiff's personal cell phone account, Ms. Torrenzano downloaded Plaintiff's phone records and gave them to Dr. Watts.

16. Upon information and belief, Dr. Watts accepted the phone records, with full knowledge that the materials had been acquired illegally.

17. Upon information and belief, Ms. Torrenzano was able to gain access to Plaintiff's personal cell phone account by guessing Plaintiff's password.

18. Ms. Torrenzano was never an authorized user to Plaintiff's personal cell phone account and had never logged into the account when Plaintiff and Ms. Torrenzano were in a relationship.

19. After discovering that Ms. Torrenzano had hacked into Plaintiff's personal cell phone account, Plaintiff warned Ms. Torrenzano that her actions had been illegal, and ordered her to not access the account in the future.

20. Upon information and belief, on October 13, 2015, both Defendant hacked into several more of Plaintiff's accounts, including USAA (banking), AT&T (personal cell phone), and Plaintiff's school email account, which is powered by Google Mail.

21. Plaintiff's IP address is or was 108.44.176.206. *See* Docket #1-1.

22. Plaintiff accessed the "Recently used devices" page of his Google account on October 13, 2015. *See* Docket #1-1.

23. Upon viewing this page, Plaintiff discovered that three devices not belonging to him – an iPhone, a Windows system, and a Mac system – had all accessed his account on the same day. *See id.*

24. On information and belief, each of the three devices that did not belong to Plaintiff, namely, the iPhone, Windows system and Mac system, belonged to one or both of the Defendant, or were being used by one or both of the Defendant during the time of the unauthorized access.

25. Plaintiff again accessed the page on October 14, 2015. *See* Docket #1-1.

26. The page stated that the iPhone had last synced with Plaintiff's Google account on October 13, 2015 at 3:18 pm. *See id.*

27. Upon information and belief, the owner of the iPhone is Ms. Torrenzano.

28. The page also stated that the iPhone first accessed the account at 1:49 am on October 13, that the approximate location of the device was Washington, DC and that the device's IP address was 166.170.31.201. *See id.*

29. The page also stated that the iPhone connected with Plaintiff's account at the same time Plaintiff's account password was reset. *See id.* Upon information and belief, this indicates that the device user reset Plaintiff's account password.

30. The page stated that the Windows device had last synced with Plaintiff's Google account on October 13, 2015 at 1:35 pm. *See id.*

31. The page also stated that the device first accessed the account at 1:10 pm on October 13, that the approximate location of the device was Winchester, VA, and that the device's IP address was 166.164.0.189. *See id.*

32. On information and belief, the Mac device is owned by Ms. Torrenzano.

33. The page stated that the Mac device had last synced with Plaintiff's Google account on October 13, 2015 at 3:28 am, and that the approximate location of the device was Winchester, VA. *See id.*

34. According to an "Activity Information" printout from Plaintiff's Gmail account, the IP address associated with the iPhone accessed Plaintiff's account at 1:49 am on October 13. *See* Docket #1-1.

35. According to the same printout, the IP address associated with the iPhone accessed Plaintiff's account again at 1:54 am on October 13. *See id.*

36. According to the printout, the IP address associated with the iPhone accessed Plaintiff's account at 3:19 am on October 13. *See id.*

37. According to the printout, the IP address associated with the iPhone accessed Plaintiff's account at 4:34 am on October 13. *See id.*

38. Upon information and belief, on October 13, Mr. Watts downloaded and printed emails between Plaintiff and Mrs. Watts.

39. Upon information and belief, Mr. Watts' IP address is 67.163.120.130. *See* Exhibit #7.

40. According to an "Activity Information" printout from Plaintiff's Gmail account, the IP address associated with Mr. Watts accessed Plaintiff's account at 3:12 am on October 13, 2015. *See* Docket #1-1.

41. Upon information and belief, on October 13, Ms. Torrenzano read emails between Plaintiff and his family, and may have made copies of emails.

42. Upon information and belief, Ms. Torrenzano also deleted the notification emails sent by Plaintiff's email account whenever a new device connects to his account.

43. Upon information and belief, in her deposition testimony from the divorce proceedings between Dr. and Mrs. Watts, Ms. Torrenzano testified that Dr. Watts possessed copies of email correspondence between Plaintiff and Mrs. Watts, that were given to Dr. Watts by Ms. Torrenzano.

44. On October 28, 2015, after discovering the above information, Plaintiff reported the breaches to the Frederick County Sheriff's Office. *See* Docket #1-1.

45. The Sheriff's Office created a report, Case No. 15-006730. *See id.*

46. The police report named David J. Watts of 281 Saint Andrews Ct., City of Winchester, VA 22602 as an involved person. *See id.*

47. In the police report, the reporting officer, K.A. Covert, reported Plaintiff's "computer" as Damaged/Vandalized. *See id.*

48. In the police report, the reporting officer reported the crime as computer trespass. *See id.*

49. Upon information and belief, on November 3, 2015, Ms. Torrenzano again hacked Plaintiff's email account, personal cell phone account, and Facebook account.

50. Plaintiff accessed the "Recently used devices" page of his Google account on November 16, 2015. *See* Docket #1-1.

51. Upon viewing this page, Plaintiff discovered that one device not belonging to him – a Windows system – had accessed his account on November 3, 2015. *See id.*

52. The page stated that the Windows system had last synced with Plaintiff's Google account on November 3, 2015 at 12:53 am, and that the approximate location of the device was Annandale, VA. *See id.*

53. Plaintiff believes that Ms. Torrenzano's actions of November 3, 2015 occurred via a computer located at her employer, Valley Health.

54. Based on his belief, Plaintiff contacted IT Security for Valley Health and requested that IT Security run a report regarding Ms. Torrenzano's actions on the work computer at the relevant times.

55. IT Security confirmed that Ms. Torrenzano did indeed visit the websites at the times given by Plaintiff, but could not give any further information.

56. Upon information and belief, Ms. Torrenzano used her work computer to hack Plaintiff's accounts because she did not want her IP address to be tracked by Plaintiff.

57. Upon information and belief, many of Plaintiff's accounts were unlawfully accessed by Defendant, but Plaintiff has not fully determined the extent of the unlawful access. Plaintiff intends to pursue discovery to determine other unlawful acts undertaken by Defendant.

58. Approximately two weeks after the November 3 incident, Ms. Torrenzano filed a petition for custody, support, and visitation with the Frederick/Winchester Juvenile and Domestic Relations District Court.

59. Upon information and belief, Ms. Torrenzano had been planning to file a petition for custody against Plaintiff during the periods of October 2015 through November 2015.

60. Upon information and belief, Torrenzano accessed Plaintiff's secured accounts for purposes of collecting information that could be used against Plaintiff in the custody proceeding.

61. Upon information and belief, Dr. Watts, in a relationship with Torrenzano, participated in the breaches for purposes of assisting Torrenzano, and because Dr. Watts would have received tangential benefits by way of Torrenzano's success in the custody hearings.

62. The custody hearings were recently concluded, in August of 2016. This action follows.

## CAUSES OF ACTION

### First Cause of Action
### Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030

63. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

64. 18 U.S.C. § 1030(a)(2)(C) provides that "Whoever…intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains…information from any protected computer…shall be punished as provided in subsection (c) of this section.

65. 18 U.S.C. § 1030(a)(4) provides that "Whoever…knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…shall be punished as provided in subsection (c) of this section.

66. 18 U.S.C. § 1030(e)(2)(B) defines the term "protected computer" to mean "a computer which is used in or affecting interstate or foreign commerce or communication…"

67. Plaintiff's computer is used in and affects interstate commerce and/or communication. Plaintiff regularly accesses websites, sends emails, and more from his computer.

68. Plaintiff's wireless phone is used in and affects interstate commerce and/or communication. Plaintiff regularly accesses websites, sends emails, and more from his wireless phone.

69. In the present matter, Defendant intentionally accessed Plaintiff's protected computer secretly and without Plaintiff's authorization.

70. Through the unauthorized access, Defendant obtained information, including but not limited to information contained in Plaintiff's emails and other personal communications.

71. Additionally, upon information and belief, Defendant accessed Plaintiff's computer knowingly and with the intent to defraud.

72. Furthermore, by means of the unauthorized access, Defendant furthered her fraud and obtained something of value, namely Plaintiff's personal information and communications, which were

73. Defendant' actions created a "loss to 1 or more persons during any 1-year period . . . aggregating at least $ 5,000 in value." 18 USC §1030(c)(4)(A)(i)(1).

74. Loss is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring . . . the system . . . to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

75. Plaintiff incurred substantial losses in responding to Defendant' offenses.[1]

---

[1] "Where the offender has accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm. In such cases courts have considered the cost of discovering the identity of the offender or the method by which the offender accessed the protected information to be part of the loss for purposes of the CFAA." *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) (*citing Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 2008 U.S. Dist. LEXIS 15329, *2-3 (D. Ariz.).

76. First, Plaintiff incurred many hours of valuable time away from day-to-day responsibilities in attempting to determine the source of the computer breach and undertaking to discover the responsible parties, which had a value of more than $5,000, alone.

77. Among other things, Plaintiff filed a police report, contacted Valley Health, and reviewed access logs on his various accounts to assess the damage to his accounts.

78. Plaintiff also spent many hours communicating with his attorney, producing and providing relevant data, and more.

79. Second, Plaintiff incurred attorney's fees in filing the instant case, in excess of $5,000. Plaintiff had to file the case to obtain third party discovery, available only via subpoena power, to determine the extent of the damages. Plaintiff is not a licensed attorney. Professional fees paid to Plaintiff's attorneys already exceed $5,000.

80. Third, Plaintiff incurred other identifiable costs, personally and via his attorneys, such as court filing fees, money transfer/wire fees, service of process charges, charges incurred to access research resources, telephone charges, and numerous other costs, that have combined to amount in excess of $5,000 in combating Defendant' violations. All such costs were reasonably necessary in "responding to" the CFAA offense.

81. Each loss alleged herein occurred within a one year period, between October 1, 2015 and October 1, 2016.

## Second Cause of Action
### Violation of Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

82. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

83. 18 U.S.C. § 2701 provides that "[W]hoever…intentionally accesses without authorization a facility through which an electronic communication service is provided…and thereby

10

obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

84. 18 U.S.C. § 2707(a) provides that "[A]ny provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity…which engaged in that violation such relief as may be appropriate.

85. 18 U.S.C. § 2707(b) provides that "In a civil action under this section, appropriate relief includes (1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c); and (3) a reasonable attorney's fee and other litigation costs reasonably incurred."

86. Defendant intentionally accessed Plaintiff's email server, "a facility through which an electronic communication service is provided."[2] Defendant did so without Plaintiff's authorization.

87. Through the aforementioned access, Defendant obtained access to Plaintiff's emails, or electronic communications, while they were in electronic storage in Plaintiff's email server.

88. Notably, all of the emails contained in Plaintiff's accounts were electronically stored on servers for purposes of backing up the emails, making such messages readily accessible to Plaintiff on the electronic server facility.

---

[2] Reviewing courts largely agree that email stored on a server are contemplated and actionable under the SCA. *See e.g. Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004).

89. Plaintiff relied upon the backups of the emails for purposes of accessing the emails on demand.

90. Moreover, despite opportunity to delete the emails in his account, Plaintiff did not do so, because he intended to retain and backup messages that had previously been transmitted for purposes of accessing such messages at a later time.

91. Prior to being held in electronic storage, each email unlawfully accessed by Defendant had been transmitted via the Internet, in interstate commerce.

92. Upon information and belief, Defendant accessed numerous emails in Plaintiff's accounts.

93. Plaintiff incurred actual damages by the illicit access because Plaintiff was forced to incur damages in time invested, software purchases to track and prevent future access, and more, as previously set forth herein.

94. Plaintiff incurred costs in bringing this lawsuit, as well, as alleged herein.

95. Defendant are each liable for statutory damages for each of the emails accessed, pursuant to § 2707(c).

**Third Cause of Action**
**Virginia Computer Fraud**

96. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

97. Va. Code Ann. § 18.2-152.3 provides that "Any person who uses a computer or computer network, without authority and…obtains property or services by false pretenses…is guilty of the crime of computer fraud."

98. Va. Code Ann. § 18.2-152.12 provides that "Any person whose property or person is injured by reason of violation of any provision of this article…regardless of whether such

act is committed with malicious intent may sue therefor and recover for any damages

sustained and the costs of suit."[3]

99. Defendant hacked into and used Plaintiff's computer and computer network without

authority.

100.     Through the use, Defendant obtained Plaintiff's property, including but not

limited to his personal information and communications, by false pretenses.

101.     The data had value to Defendant, who intended to use the unlawfully accessed

information in a custody proceeding with Plaintiff.

102.     Information used by Defendant likely played a role in the entry of a court order

that ordered Mr. Hately to pay child support.

103.     Moreover, Plaintiff incurred substantial damages and costs through and in

responding to Defendant' offense, as stated in detail herein.

**Fourth Cause of Action**
**Virginia Computer Trespass**

104.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

105.     Va. Code Ann. § 18.2-152.4(A) provides that "It shall be unlawful for any person,

with malicious intent, to (1) temporarily or permanently remove, halt, or otherwise

disable any computer data, computer programs or computer software from a computer or

computer network; (3) alter, disable, or erase any computer data, computer programs or

computer software; or (6) use a computer or computer network to make or cause to be

made an unauthorized copy, in any form, including, but not limited to, any printed or

---

[3] "Finding nothing in the statute to suggest that consequential damages are not available under section 18.2-152.12, we agree that it was error to dismiss the VCCA claim solely on this basis. . . We conclude that the evidence of consequential damages presented by iParadigms [Defendant] came within the 'any damages' language of the VCCA, and therefore that the district court erroneously granted summary judgment because there was no evidence of 'actual or economic damages.'" *A.V. v. iParadigms, LLC*, 562 F.3d 630, 647 (4th Cir. 2009).

electronic form of computer data, computer programs or computer software residing in, communicated by, or produced by a computer or computer network."

106.     Va Code Ann. § 18.2-152.12 provides that "Any person whose property or person is injured by reason of violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit."

107.     Defendant hacked into Plaintiff's computer and cell phone with malicious intent.

108.     Upon information and belief, Defendant removed emails from Plaintiff's computer.

109.     Upon information and belief, Defendant altered Plaintiff's emails, and email account password.

110.     Upon information and belief, Defendant used a computer and computer network to make unauthorized printed and electronic copies of data, including, but not limited to emails, located on Plaintiff's computer and phone.

111.     The Frederick County Sheriff's Office police report characterizes the crime reported by Plaintiff as computer trespass.

112.     Through the use, Defendant obtained Plaintiff's property, including but not limited to his personal information and communications, by false pretenses.

113.     The data had value to Defendant, who intended to use the unlawfully accessed information in a custody proceeding with Plaintiff.

114.     Information used by Defendant likely played a role in the entry of a court order that ordered Mr. Hately to pay child support.

115.     Plaintiff incurred substantial damages and costs through and in responding to Defendant' offense.

### Fifth Cause of Action
### Virginia Computer Invasion of Privacy

116.     Plaintiff incorporates each of the foregoing allegations as if set forth fully herein.

117.     Va. Code Ann. § 18.2-152.5 provides that "A person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any employment, salary, credit or any other financial or identifying information, as defined in clauses (iii) through (xiii) of subsection C of § 18.2-186.3, relating to any other person. 'Examination' under this section requires the offender to review the information relating to any other person after the time at which the offender knows or should know that he is without authority to view the information displayed."

118.     Va. Code Ann. § 18.2-152.12 provides that "Any person whose property or person is injured by reason of violation of any provision of this article…regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit."

119.     Under subsection C of § 18.2-186.3, "identifying information" includes bank account numbers, personal identification numbers, electronic identification codes, and passwords.

120.     Defendant used a computer and computer network and to intentionally examine Plaintiff's private files.

121.     Defendant did not have permission or the authority to view Plaintiff's files, and viewed the files after Plaintiff and Ms. Torrenzano were no longer together, as well as after Plaintiff told Ms. Torrenzano to stop hacking into his computer.

122.     Upon information and belief, through hacking Plaintiff's computer and cell phone, Defendant examined Plaintiff's bank account and email account, among others. These accounts included identifying information, including bank account numbers, personal identification numbers, and passwords.

123.     Through the use, Defendant obtained Plaintiff's property, including but not limited to his personal information and communications, by false pretenses.

124.     The data had value to Defendant, who intended to use the unlawfully accessed information in a custody proceeding with Plaintiff.

125.     Information used by Defendant likely played a role in the entry of a court order that ordered Mr. Hately to pay child support.

126.     Plaintiff incurred substantial damages and costs through and in responding to Defendant' offense.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff seeks the following relief:

1.     An award for damages, in an amount not less than $100,000, in an amount to be proven at trial;

2.     An award of all economic, statutory, monetary, actual, consequential, and compensatory damages caused by Defendant' conduct, and if their conduct is proven willful, award Plaintiff exemplary damages;

3.      Disgorgement or restitution by Defendant of all revenue earned from the fraudulent and unlawful practices described herein;

4.      An award of punitive damages, in an amount to be proven at trial;

5.      An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

6.      An award to Plaintiff of reasonable litigation expenses and attorneys' fees;

7.      An award to Plaintiff of pre-judgment and post-judgment interest, to the extent allowable; and

8.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury with respect to each claim in this Amended Complaint.


Respectfully submitted,

/s/ Eric Menhart
Eric Menhart, Esq. (admitted *pro hac vice*)
Lexero Law
316 F St NE Suite 101
Washington, DC 20002
Phone: 855-453-9376
Fax: 855-453-9376

/s/ William P. Robinson
William P. Robinson III, Esq.
Tysons Pond 2 Center
1604 Spring Hill Road Suite 300
Vienna, VA. 22182
703-789-4800 phone
703-351-7579 fax
william@robinsonslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed via the Court's ECF system and all parties of record were served via that system.

<u>/s/ William P. Robinson</u>
William P. Robinson III, Esq.

18